IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division



ANTONIO MONROE,

    Plaintiff,

v.                                       Civil Action No. 3:18CV852

DENNIS RIVET,

    Defendant.

## MEMORANDUM OPINION

Antonio Monroe, a Virginia inmate proceeding *pro se* and *in forma pauperis*, filed this 42 U.S.C. § 1983 action. Monroe contends that he failed to receive adequate medical care during his incarceration in the Haynesville Correctional Center. Monroe names Dr. Dennis Rivet, an attending physician in the Department of Neurosurgery at VCU Medical Center, as the sole Defendant. (ECF No. 4, at 1; ECF No. 21, at 1.) Defendant Rivet has moved to dismiss the Complaint. (ECF No. 20.) For the reasons stated below, the Motion to Dismiss will be DENIED.

### I.    STANDARD FOR MOTION TO DISMISS

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citation omitted). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Martin*, 980 F.2d at 952. This principle applies only to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than

conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

The Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (second alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Plaintiffs cannot satisfy this standard with complaints containing only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* (citations omitted). Instead, a plaintiff must allege facts sufficient "to raise a right to relief above the speculative level," *id.* (citation omitted), stating a claim that is "plausible on its face," *id.* at 570, rather than merely "conceivable." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp.*, 550 U.S. at 556). In order for a claim or complaint to survive dismissal for failure to state a claim, therefore, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citing *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002); *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002)). Lastly, while the Court liberally construes *pro se* complaints, *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978), it does not act as the inmate's advocate, *sua sponte* developing statutory and constitutional claims the inmate failed to clearly raise on the face of his complaint. *See Brock v. Carroll*, 107 F.3d 241, 243 (4th Cir. 1997) (Luttig, J., concurring); *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

## II. SUMMARY OF ALLEGATIONS

Monroe alleges the following in support of his Eighth Amendment claim:[1]

While incarcerated at the Haynesville Correction[al] Center, I visited medical and began complaining about headaches and constant dizziness. I was sent out to an outside specialist for further observation and examination to get a better understanding of the problem. During which time it was noted I had a blood clot developing in my head that needed to be removed. On 8/11/2017, the first surgery was commenced to remove the blood clot. After this initial surgery proved to be unsuccessful, another surgery was conducted on 9/25/17 to eradicate[] the remaining blood clot. Unfortunately, this surgery also proved to be a failure. Therefore, on 10/30/17, the surgeon attempted to try a procedure that subjected Plaintiff to cruel and unusual medical practices by a doctor who [is] supposed to be competent and dexterous in the medical field.

Instead of correcting the problem of the 8/11/17 and 9/25/17 surgeries, this doctor deviated from the requisites of the medical guide and on 10/30/17, he subjected Plaintiff to harm. First, this doctor injected "onyx in the area of the blood clot and continually kept Plaintiff under a 'radiation lamp'." From this subsequent surgery, Plaintiff underwent an allergic reaction and had to be rushed to the emergency room for further diagnosis.

After thorough evaluations, tests, and other medical procedures, it was confirmed that Plaintiff['s] scalp [was] perpetually burned from the "radiation lamp" being left on too long and an acute infection had developed from the injection of onyx. [This] now keeps Plaintiff in the hospital for several days/weeks undergoing intense tests, evaluation, and causing him to take heavy doses of medication to reduce the swelling in his head. When none of this seem[ed] to be working, Plaintiff was removed from the hospital and placed in a medical ward at DMCC, during which time he had to remain for the next 6 to 7 months being hooked with a "pickline" to [ensure] none of the toxins from the infections entered his brain. After months of going through this "pain and suffering," on 5/11/18 another surgery was done. As a result, from the (4) four surgeries Plaintiff underwent, he is left with a debilitating on his head [sic] and constantly he experienc[es] dizziness and pain. . . . [T]he institution is having to refer [him] time & time again to be seen by an outside specialist, due to this doctor's deliberate indifference to Plaintiff's serious medical need and health.

Plaintiff now, becomes the victim of a "cruel medical tactic the doctor used which he knew would be detrimental to Plaintiff's initial medical treatment and health." As a result, leaving Plaintiff with a permanent scar on his head [and] subjecting Plaintiff to both mental pain and mental suffering, where Plaintiff has to continually be seen by outside physicians in order to determine the longevity [effect] the botched surgery/surgeries will have on Plaintiff's life and health.

---

[1] The Court corrects the spelling, capitalization, spacing, and punctuation in the quotations from Monroe's submissions. The Court employs the pagination assigned by the CM/ECF docketing system to Monroe's submissions.

3

(Compl. 4–5.) Monroe demands monetary damages. (*Id.* at 6.)

### III. STANDARD FOR AN EIGHTH AMENDMENT CLAIM

To make out an Eighth Amendment claim, an inmate must allege facts that indicate "(1) that objectively the deprivation suffered or harm inflicted was 'sufficiently serious,' and (2) that subjectively the prison officials acted with a 'sufficiently culpable state of mind.'" *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). Under the objective prong, the inmate must allege facts that suggest that the deprivation complained of was extreme and amounted to more than the "'routine discomfort'" that is "'part of the penalty that criminal offenders pay for their offenses against society.'" *Strickler v. Waters*, 989 F.2d 1375, 1380 n.3 (4th Cir. 1993) (quoting *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)). "In order to demonstrate such an extreme deprivation, a prisoner must allege 'a serious or significant physical or emotional injury resulting from the challenged conditions.'" *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003) (quoting *Strickler*, 989 F.2d at 1381).

In order to state an Eighth Amendment claim for denial of adequate medical care, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). "To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990) (citing *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986)). Furthermore, in evaluating a prisoner's complaint regarding medical care, the Court is mindful that "society does not expect that prisoners will have unqualified access to health care" or to the medical treatment of their choosing. *Hudson*, 503 U.S. at 9 (citing *Estelle*, 429 U.S. at 103–04). In this regard, the right to medical treatment is

limited to that treatment which is medically necessary and not to "that which may be considered merely desirable." *Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977).

The subjective prong of a deliberate indifference claim requires the plaintiff to allege facts that indicate a particular defendant actually knew of and disregarded a substantial risk of serious harm to his person. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "Deliberate indifference is a very high standard—a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999) (citing *Estelle*, 429 U.S. at 105–06).

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer*, 511 U.S. at 837. *Farmer* teaches "that general knowledge of facts creating a substantial risk of harm is not enough. The prison official must also draw the inference between those general facts and the specific risk of harm confronting the inmate." *Quinones*, 145 F.3d at 168 (citing *Farmer*, 511 U.S. at 837); *see Rich v. Bruce*, 129 F.3d 336, 338 (4th Cir. 1997) (stating same). Thus, to survive a motion to dismiss, the deliberate indifference standard requires a plaintiff to assert facts sufficient to form an inference that "the official in question subjectively recognized a substantial risk of harm" and "that the official in question subjectively recognized that his actions were 'inappropriate in light of that risk.'" *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) (quoting *Rich*, 129 F.3d at 340 n.2).

5

## IV. DEFENDANT'S ARGUMENTS FOR DISMISSAL

Defendant Rivet argues that

> Significantly, Monroe does not allege Dr. Rivet failed to provide him with medical care. Rather, Monroe's allegations related to his purported dissatisfaction with the outcome of the care Dr. Rivet provided. Because Monroe's factual allegations are insufficient to state a claim upon which relief may be granted, Dr. Rivet moves this Court to dismiss the Complaint.

(Mem. Supp. Mot. Dismiss 2, ECF No. 21.) Defendant's Motion to Dismiss is ill-considered. Monroe need not allege that Dr. Rivet "failed to provide him with medical care" to survive a motion to dismiss. Rather, he must allege facts that indicate that Defendant Rivet knew of and disregarded a substantial risk of serious harm to his person. *Farmer*, 511 U.S. at 837. "The fact that [Defendant Rivet] provided [Monroe] with some medical care does not by itself extinguish [Monroe's] constitutional claims based on inadequate medical care." *Daniels v. Caldwell*, No. 3:11CV461, 2013 WL 85165, at *4 (E.D. Va. Jan. 7, 2013) (citing *Hunt v. Upoff*, 199 F.3d 1220, 1224 (10th Cir. 1999)). Moreover, based on the facts as alleged by Monroe, this was not a mere "dissatisfaction with the outcome" of the care he received, as Monroe alleges facts that plausibly suggest that he sustained injury from the treatment.

Generally, "the question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment." *Estelle v. Gamble*, 429 U.S. 97, 107 (1976). Nevertheless, "[w]hether a course of treatment was the product of sound medical judgment, negligence, or deliberate indifference depends on the facts of the case." *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998). Monroe's allegations are sufficient, at this stage, to indicate that Defendant Rivet acted with deliberate indifference. *See id.* at 704.

## V. CONCLUSION

Defendant Rivet's Motion to Dismiss (ECF No. 20) will be DENIED. Any party wishing to file a dispositive motion, must do so within sixty (60) days of the date of entry hereof.

An appropriate Order will accompany this Memorandum Opinion.

Date: 29 October, 2019
Richmond, Virginia

/s/ _____
John A. Gibney, Jr.
United States District Judge